Walter R. OVESON, Appellant,

v.

MUNICIPALITY OF ANCHORAGE,
Appellee.

No. 3434.

Supreme Court of Alaska.

Feb. 3, 1978.

Rod Sisson of Abbott, Lynch, Farney &
Rodey, Anchorage, for appellant.

Jerry Wertzbaugher, Municipal Prosecu-
tor, and Richard W. Garnett III, Municipal
Atty., Anchorage, for appellee.

Before BOOCHEVER, C. J., and RABI-
NOWITZ, CONNOR, BURKE and MAT-
THEWS, JJ.

## OPINION

CONNOR, Justice.

Walter R. Oveson was convicted of operating a motor vehicle while under the influence of intoxicating liquor, in violation of the Anchorage Code of Ordinances, section 9.28.020. He appeals, challenging the admissibility of the results of his breathalyzer examination.

On October 21, 1976, Oveson was involved in an automobile accident with a taxicab at a parking lot in downtown Anchorage. Patrolman S. Moen responded to the accident and observed that Oveson was having difficulty speaking and maintaining his balance. He also noticed a strong odor of liquor about Oveson.

Moen arrested Oveson and transported him to the state jail facility where Sergeant Charles Audino administered a breathalyzer test.[1] Audino prepared a "Breathalyzer Operational Checklist" for the test administration. The checklist is a registry of the steps to be performed in the proper administration of the breathalyzer examination. After each stage is accomplished, the test administrator is to mark a check in the box next to that step.[2]

1. See Lauderdale v. State, 548 P.2d 376, 378–79 (Alaska 1976), and Wester v. State, 528 P.2d 1179, 1180 (Alaska 1974), both quoting from State v. Baker, 56 Wash.2d 846, 355 P.2d 806, 809 (1960), for a detailed description of the breathalyzer test.

2. The "Breathalyzer Operational Checklist" prepared for Oveson was completed as follows:

BREATHALYZER OPERATIONAL CHECK LIST  76-51673

Name of Subject _WALTER R. OVESON_ Date _10-21-76_

Time (of test) _0217_ Blood Alcohol 0._23+_ % Ampul Control No. _6620_

Operator _SGT. C. AUDINO_ Witness _OFF. MOEN_

Instrument ____900____ No. _12-8219_

J. Mm  76-51673

1. ☑ Observe subject for twenty minutes prior to testing to prevent oral intake of any material.
PREPARATION
2. ☑ Throw SWITCH to "ON", wait until THERMOMETER shows 50° + 3° C.
3. ☐ Gauge TEST AMPUL and insert in left-hand holder.
4. ☑ Gauge TEST AMPUL, open, insert BUBBLER and connect to outlet.
PURGE
5. ☑ Turn to TAKE, flush out, turn to ANALYZE.
6. ☑ When RED empty signal appears, wait 1-1/2 minutes, turn on LIGHT, BALANCE.
7. ☑ Set BLOOD ALCOHOL POINTER on START line.
ANALYSIS
8. ☑ Turn to TAKE, take breath sample, turn to ANALYZE, (record time).
☑ When RED empty signal appears, wait 1-1/2 minutes, turn on LIGHT BALANCE.

Record Answer, dispose of test ampul, TURN CONTROL KNOB to "OFF"

Audino checked off all of the steps except step number three which reads "Gauge TEST AMPUL and insert in left-hand holder." This ampul is the control ampul for the examination. Its color remains constant, and is used to compare the color change in the right-hand ampul. It is important to gauge the ampuls because there must be a minimum of three milliliters of solution in each or the resultant reading will be inaccurately high.[3]

The breathalyzer test determined Oveson's blood alcohol level to be .23 percent.

Oveson moved to suppress the breathalyzer results for lack of a completed checklist. At the suppression hearing, Audino was qualified as an expert in breathalyzer administration. He testified that when he administered the test to Oveson, he executed all the requisite steps of the checklist, including gauging the test ampul and inserting it in the left-hand holder. The failure to check off the box representing that step was an oversight.

█ The district court denied Oveson's motion. He then entered a plea of nolo contendere pursuant to an agreement with the municipal attorney which preserved his right to appeal the denial of the suppression motion.[4] The superior court affirmed the conviction.

The sole issue on appeal is whether the failure to complete the "Breathalyzer Operational Checklist" renders the breathalyzer results inadmissible. AS 28.35.033(d) provides:

"(d) To be considered valid under the provisions of this section the chemical analysis of the person's breath shall have been performed according to methods approved by the Department of Health and Social Services. The Department of Health and Social Services is authorized to approve satisfactory techniques, methods, and standards of training necessary to ascertain the qualifications of individuals to conduct the analysis. If it is established at trial that a chemical analysis of breath was performed according to approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Health and Social Services, there is a presumption that the test re-

---

3. *See Lauderdale v. State,* 548 P.2d 376, 379 (Alaska 1976).

4. Oveson relies upon *Cooksey v. State,* 524 P.2d 1251 (Alaska 1974), for approval of this procedure. However, *Cooksey* is not applicable.

There were two critical factors present in *Cooksey* which led us to hold that the defendant had reserved a limited right to appeal a non-jurisdictional defect after he had entered a plea of nolo contendere. The first was that the defendant's plea was explicitly conditioned upon his reserved right to appeal. If the condition were then not honored, the plea would be subject to attack as not having been entered intelligently.

Second, the issue reserved for appeal in *Cooksey* was one that, if Cooksey prevailed upon appeal, would have resulted in the dismissal of the charge and would have barred further prosecution. Therefore, "it would be wasteful of legal resources to require that Cooksey undergo a full trial for the mere sake of preserving

the right to appeal the speedy trial ruling of the superior court." *Cooksey, supra,* at 1256.

The second *Cooksey* criterion does not apply in this case. Even if we were to reverse the trial court's denial of Oveson's suppression motion, it would not definitively determine the outcome of the case. Oveson could still be tried and convicted of this offense on evidence other than the results of his breathalyzer examination. The procedure followed in this appeal in effect accomplishes an appeal of an interlocutory order, thus circumventing the requirements of Appellate Rules 23 and 24 for petitions for review.

Henceforth, appeals under the *Cooksey* doctrine will not be approved unless it is clearly shown, and the parties have stipulated with trial court approval, that our resolution of the issue reserved for appeal will be dispositive of the entire case. To the extent that *Richardson v. State,* 563 P.2d 266, 267 n.1 (Alaska 1977), and *Trunnel v. State,* 535 P.2d 1041, 1042 n.1 (Alaska 1975), may be read otherwise, they should be considered modified.

sults are valid and further foundation for introduction of the evidence is unnecessary."[5]

The approved methods of administering the breathalyzer, established by the Department of Health and Social Services in accord with AS 28.35.033(d), are set forth in 7 Alaska Administrative Code, section 30.020.[6] Completion of the "Breathalyzer Operational Checklist" is the first of thirteen procedures established for proper test administration. 7 AAC 30.020(1).

Oveson urges that because the language of AS 28.35.033(d) and 7 AAC 30.020 is mandatory, noncompliance of any degree must result in the suppression of the test results. We do not dispute Oveson's contention that completion of the checklist is required under AS 28.35.033(d). We disagree, however, that absolute compliance in completing the checklist is required in order to render the test results valid and admissible in evidence.

The "Breathalyzer Operational Checklist" is a simplified method of establishing the admissibility of the evidence. It furnishes the court with a clear record that all the substantive test procedures were accomplished, thereby minimizing the possibilities of human error and failed memory. This then warrants the AS 28.35.033(d) presumption that the results are valid without any additional showing of foundational facts. If the checklist is not complete, the presumption of validity is inapplicable. But it does not necessarily follow that the test results are, therefore, automatically inadmissible.

In *Wester v. State,* 528 P.2d 1179 (Alaska 1974), *cert. denied,* 423 U.S. 836, 96 S.Ct. 60, 46 L.Ed.2d 54 (1975), we held that "substantial compliance" with the 15-minute observation period required in 7 AAC 30.020(2) is a "prima facie showing of the foundational fact necessary to establish admissibility." *Wester v. State, supra,* at 1184. The testing officer in *Wester* failed to personally

---

**5.** Anchorage Code of Ordinances, § 9.28.023 governs the validity and use of breathalyzer tests for the Municipality of Anchorage. Oveson was convicted under the Anchorage Code of Ordinances. AO 9.28.023(D) contains virtually the same language as AS 28.35.033(d).

**6.** 7 Alaska Administrative Code (hereinafter referred to as AAC) § 30.020 provides as follows:
"*Procedure for Analysis.* The procedures set forth in this section shall be followed to obtain and analyze breath samples by use of the Borkenstein Breathalyzer[.]
(1) complete the "Breathalyzer Operational Checklist" form by recording the name of the subject, date, the ampoule control number, the name of the operator, the name of a witness if the test is witnessed by someone other than the operator, and the serial number of the instrument used. Procedures specified on the list shall be checked as they are completed;
(2) observe the subject to be tested for at least 15 minutes immediately prior to testing to insure that he does not regurgitate or place anything in his mouth during that period of time;
(3) turn on the Breathalyzer and warm the sample chamber to a temperature of 50 de-

grees centigrade, plus or minus three degrees;
(4) gauge a test ampoule and insert it in the left holder;
(5) gauge a second test ampoule, open it, insert the bubbler and make the connection to the outlet tube;
(6) turn the control knob to "TAKE," flush the sample chamber with a syringe and turn the control valve to "ANALYZE";
(7) wait 90 seconds after the red light appears, then turn on the photometer light source and balance the galvanometer;
(8) set the blood alcohol pointer on the start position;
(9) turn the control valve to "TAKE," procure the sample of breath and turn the control valve to "ANALYZE";
(10) record the time when the breath sample was acquired;
(11) wait 90 seconds after the red light appears, then turn on the photometer light source and balance the galvanometer;
(12) record the value indicated by the blood alcohol pointer;
(13) record the test particulars in the Breathalyzer log book."

observe the defendant throughout the full 15 minutes preceding the test. However, there was evidence that the arresting officer did keep the defendant under observation, rendering it highly unlikely that the defendant could have ingested anything which would have affected the test readings. In finding that evidence sufficient to validate the test results, we said:

"While we do not wish to undermine the status of the observation period as a necessary foundational fact in the introduction of breathalyzer results, we do conclude that a rigid standard of proof of this foundational fact is unnecessary." (footnote omitted) *Wester v. State, supra,* at 1184.

That policy is equally applicable to the case at hand.

Oveson does not contend that Audino did not gauge and properly insert the control ampul or that the test results are unreliable. He offers no evidence to show that noncompliance with 7 AAC 30.020(1) affected the test results in any manner. In fact, Oveson could have guaranteed the reliability of the results by retesting the ampuls. The ampuls are preserved and the amount of fluid and the chemical composition of the control ampul are not significantly altered by performance of the test. *See Lauderdale v. State,* 548 P.2d 376 (Alaska 1976); 2 Erwin, *Defense of Drunk Driving Cases,* § 22.03 (3rd ed. 1977).

As in *Wester,* the crucial concern is that the breathalyzer test be performed in a manner that assures accuracy according to the statutorily approved methods. Here the checklist was complete but for one checkmark. All other pertinent data were filled in. There was uncontroverted testimony that the step in question was performed despite the failure to check off the box representing that step. Once the trier of fact believed the evidence that the control ampul was gauged and inserted in the left-hand holder, a proper foundation was laid to find the results valid under AS 28.-35.033(d). A clerical error by the test operator ought not to render the results inadmissible without a showing that the validity of the results is tainted. Were we to hold otherwise, we would be inviting a contest to find technical defects, regardless of their impact on the validity of the test results.

We hold that where there has been substantial compliance with the "Breathalyzer Operational Checklist" provision of 7 AAC 30.020(1), and that where the record demonstrates that the test was properly performed, the test results are admissible under AS 28.35.033(d).

AFFIRMED.