**James FREE, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. 4056.**

Supreme Court of Alaska.

Aug. 1, 1980.

---

Deborah A. Paquette, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

John A. Scukanec, Monica Jenicek, Asst. Dist. Attys., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

OPINION

BURKE, Justice.

James Free appeals from the finding of the superior court that the warrantless search of his person was valid as a permissible investigative stop and frisk under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We affirm.

James Free was a suspect in a burglary which occurred in the early morning hours of December 16, 1977. Among the items taken were two handguns. Trooper Michael Marrs investigated the burglary, and that afternoon interviewed M.C., a seventeen year old Alaska native male whom the owner of the residence suspected of having committed the crime. M.C. denied any involvement in the incident, and accused another Alaska native, James Free, of the burglary. The next day, M.C. spoke briefly with Marrs and Eric Feichtinger, another trooper who knew James Free. Feichtinger has been asked by Marrs to help locate Free. Later that day, M.C. admitted to Marrs that he was involved in the burglary with Free. He also told the trooper that Free had attempted to contact him to sell the guns taken in the burglary, and that if he could get in touch with Free, he might be able to get them back. At the conclusion of this interview, M.C. asked to be taken to the Mountain View area of Anchorage where he apparently thought he could contact James Free.

Sometime between 11:00 and 11:30 p. m. that same night, Trooper Feichtinger received a call from a confidential informant who, Feichtinger later testified, had furnished reliable information on three prior occasions. The informant told Feichtinger that a native male had approached him and told him he needed money and intended to commit an armed robbery that night in the Mountain View area. The native male also said he had some guns to sell, and the informant gave Feichtinger the location of a house in Mountain View where the guns were to be sold.[1] The address was close to a Qwik Stop grocery store, one of two business establishments known to remain open late at night in that area and a logical target for an armed robbery. He contacted Marrs with this information and told him that it might have something to do with the Free burglary investigation.

That night, Feichtinger and several other troopers staked out the Qwik Stop using two unmarked patrol cars.[2] One car parked near the store; the other, which Feichtinger occupied, parked several blocks away from it. At approximately 1:00 a. m., Feichtinger observed four individuals leave a house near the Qwik Stop, and split into two pairs. One pair went in the direction of the store, and the troopers in the patrol car nearest the store followed them. The second pair walked in the direction of Feichtinger's vehicle, but turned off into a side street before actually reaching the patrol car. Feichtinger and his partner decided to assist the investigators by going to the Qwik Stop, but, before doing so, drove past the second pair to see "if in fact either of these two individuals were . . . James Free." As the troopers drove past, Feichtinger recognized one of the pair as Free. The other, upon contact, turned out to be M.C. Desiring to question Free regarding the burglary, the troopers exited their vehicle, identified themselves as police officers, ordered the two to stop, and performed a brief pat search of their persons.[3]

Handguns sealed inside plastic bags were found on both Free and M.C. Although

1. The informant told Trooper Feichtinger that this individual wanted to sell two guns, a .22 calibre revolver, and a .38 or .357 revolver. These were of the same calibre as those taken in the burglary.

2. The other establishment known to remain open late at night was a gas station, but since it was some distance from the location where the guns were apparently to be sold, the officers decided not to stake it out.

3. Trooper Feichtinger gave the following explanation for why he approached Free as he did. I went up to him because I knew that Trooper Marrs wanted to question him reference a burglary. And that he would probably be arrested for the burglary. Trooper Marrs

Free's gun was unloaded, cartridges were in the bag with it. Both Free and M.C. were arrested for carrying concealed weapons and told they would be taken to trooper headquarters for questioning regarding a burglary. The weapons were subsequently identified by Trooper Marrs as those taken in the December 16th burglary. Both Feichtinger and Marrs informed Free of his "*Miranda* rights" at headquarters, whereupon he agreed to talk and confessed to committing the burglary with M.C.

■ Free was subsequently indicted for burglary in a dwelling in violation of AS 11.20.080.[4] Free filed a motion to dismiss the indictment, pursuant to Criminal Rules 6(q), 6(r), and 26(g),[5] based upon his contention that his arrest and later confession were the result of an illegal search and seizure. Judge Eben Lewis refused to dismiss the indictment, finding that the search of Free's person was acceptable under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20

L.Ed.2d 889 (1968). Free then pled *nolo contendere* to the burglary charge before another judge, Peter J. Kalamarides, retaining the right to appeal Judge Lewis's ruling on the stop and frisk issue. We established the requirements of such a plea in *Oveson v. Municipality of Anchorage*, 574 P.2d 801 (Alaska 1978), where we said that the plea must be "explicitly conditioned upon [the] reserved right to appeal" and the parties have stipulated with the trial court's approval that the issues reserved for appeal are "dispositive of the entire case." *Id.* at 803 n. 4. Appellant has met these criteria. *See also Cooksey v. State*, 524 P.2d 1251 (Alaska 1974).

■ The central issue in this appeal is whether the investigatory stop and frisk of James Free violated his rights against unreasonable searches and seizures guaranteed by the fourth amendment of the United States Constitution[6] and article I, § 14

had indicated to me that he had probable cause to arrest him. . . . I had reason to believe that he may possibly be armed because Trooper Marrs had told me that 2 weapons were taken in the burglary and I was aware . . . that Jim Free supposedly had those weapons. I was also aware that there was this possibility of an armed robbery being committed in the Mt. View area that night by a native male . . . .

4. AS 11.20.080 provides:

*Burglary in dwelling house.* A person who breaks and enters a dwelling house with intent to commit a crime in it, or having entered with that intent, breaks a dwelling house or is armed with a dangerous weapon in it, or assaults a person lawfully in it is guilty of burglary, and upon conviction is punishable by imprisonment in the penitentiary for not less than one year nor more than 10 years. However, if the burglary is committed at nighttime, it is punishable by imprisonment for not less than one year nor more than 15 years. If a human being is within the dwelling at the time of the burglary during the nighttime or daytime, it is punishable by imprisonment for not less than one year nor more than 20 years.

5. Subsections (q) and (r) of Rule 6, Alaska R.Crim.P., provide:

(q) *Sufficiency of Evidence.* When the grand jury has reason to believe that other availa-

ble evidence will explain away the charge, it shall order such evidence to be produced and for that purpose may require the prosecuting attorney to subpoena witnesses. An indictment shall not be found nor a presentment made upon the statement of a grand juror unless such grand juror is sworn and examined as a witness. The grand jury shall find an indictment when all the evidence taken together, if unexplained or uncontradicted, would warrant a conviction of the defendant.

(r) *Admissibility of Evidence.* Evidence which would be legally admissible at trial shall be admissible before the grand jury. In appropriate cases, however, witnesses may be presented to summarize admissible evidence if the admissible evidence will be available at trial. Hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction. If hearsay evidence is presented to the grand jury, the reasons for its use shall be stated on the record.

Rule 26(g) provides:

*Evidence Illegally Obtained.* Evidence illegally obtained shall not be used for any purpose including the impeachment of a witness.

6. The fourth amendment of the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but

of the Alaska Constitution.[7] In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court upheld the constitutionality of the stop and frisk procedure stating that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906–07. In doing so, the officer is entitled to take steps to protect himself by performing a limited search for weapons when he has reason to believe that the person being investigated is armed and presently dangerous. *Id.* at 24, 88 S.Ct. at 1881, 20 L.Ed.2d at 908.

We sustained the constitutionality of the investigatory stop procedure in our decisions in *Ebona v. State*, 577 P.2d 698 (Alaska 1978), and *Coleman v. State*, 553 P.2d 40 (Alaska 1976). In certain situations, "i. e., cases where the police officer has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred," *id.* at 46, temporary detentions for questioning are allowed. We believe the instant case presents such a situation.

At the time of the stop, Trooper Feichtinger was well aware of the fact that a burglary had been recently committed. Furthermore, he knew that Free was the primary suspect in the investigation. In light of this knowledge, when Feichtinger drove past the two individuals and recognized one of them to be Free, stopping him in order to question him regarding the burglary was a reasonable procedure.

The Fourth Amendment does not require a policeman who lacks the precise level of

information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response.

*Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–17 (1972). The investigatory stop of Free was such a response. We therefore conclude that under the circumstances of this case, Trooper Feichtinger's stop of Free was lawful.

Given the fact that the stop was justified, the reasonableness of the patdown search for weapons must next be considered. The fourth amendment allows a police officer who has a reasonable belief that the individual with whom he is dealing may be armed and dangerous to conduct a limited search for weapons for his own protection. *Adams v. Williams*, 407 U.S. at 146, 92 S.Ct. at 1923, 32 L.Ed.2d at 617; *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. The officer need not be "absolutely certain" that the individual is armed, nor have probable cause to arrest him for a crime—only that his safety or that of others may be in danger. *Id.* at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. The officer's reasonable belief may be based on his own personal observations or information from a reliable third party. *Adams v. Williams*, 407 U.S. at 147, 92 S.Ct. at 1924, 32 L.Ed.2d at 617. In *Adams*, the Supreme Court upheld the stop and frisk of an individual seated alone in a vehicle early in the morning in a high crime area. Like the instant case, the basis for the officer's belief that the individual would be armed and dangerous was the tip of an informant. The fact that Trooper Feichtinger had re-

7. Article I, § 14 of the Alaska Constitution states:

upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

The right of the people to be secure in their persons, houses and other property, papers, and effects, against unreasonable searches and seizures, shall not be violated. No warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

ceived a tip from a reliable informant that an armed robbery might occur in that area, coupled with his prior knowledge that James Free might be in the same neighborhood, planning to sell the guns taken in the burglary, provided reasonable justification for his belief that Free and M.C. might be armed.[8] Therefore, the patdown of Free did not constitute an unreasonable search.[9]

■ In conclusion, since the actions of Trooper Feichtinger conformed to the standards imposed by *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Coleman v. State*, 553 P.2d 40 (Alaska 1976), the investigatory stop and frisk of Free will be upheld. When the primary suspect in a recent felony is encountered by a police officer, it is not unreasonable for him to briefly detain that individual for questioning, and when the officer has reasonable cause to believe the individual may be armed, to execute an immediate patdown of his person for weapons.

AFFIRMED.

RABINOWITZ, Chief Justice, concurring.

I concur in the conclusion that the investigatory stop of Free was constitutional, but for on a different basis. In *Ebona v. State*, 577 P.2d 698, 700 (Alaska 1978), this court reiterated the strict limits placed on permissible investigatory stops that were first articulated in *Coleman v. State*, 553 P.2d 40 (Alaska 1976). To be permissible, an investigatory stop must take place in the circumstance where

a police officer with a reasonable suspicion that imminent public danger exists

or that serious harm that has recently occurred was caused by a particular person may stop that person.

553 P.2d at 43.

The majority finds the stop justified by the recent occurrence of a burglary. At the time of the stop, the burglary was two days old and the need for an immediate response had dissipated. While I do not think that the burglary justified the stop, I conclude that the investigatory stop was justified under the imminent public danger test because of the possibility of an armed robbery. Trooper Feichtinger testified, in part that he

was also aware that there was this possibility of an armed robbery being committed in the Mt. View area that might be a native male, a young native male.

Free was a young native male and a known suspect in a recent burglary in which two pistols had been acquired. Free supposedly had them, and there was information linking him to a possibly imminent armed robbery. In such circumstances, I believe an investigatory stop was warranted.

**8.** See note 3 *supra*.

**9.** *Cf. Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (warrantless search and seizure of customer on premises of tavern which itself was subject to search warrant was unreasonable because police had no reason to believe that customer would be armed and dangerous). In *Ybarra* the Supreme Court discussed in detail when a stop and frisk is permissible under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). They indicated that the search of Ybarra would have been constitutional under the *Terry* standard if the police had recognized the defendant, had some reason to believe that the defendant had committed, was committing, or about to commit a crime, or that the defendant was armed and presently dangerous. All of these factors were satisfied in the case at bar; the officer recognized Free, had reason to believe that he had recently committed a crime, and that he might be armed. The patdown of James Free, therefore, fell well within the scope of *Terry* as set forth in *Ybarra*.