STATE OF HAWAII, Plaintiff-Appellee, *v.* ROBIN LYNNE ROLI-
SON, Defendant-Appellant

NO. 11413

(D.C. NO. T85-14142)

FEBRUARY 12, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Defendant Robin Lynne Rolison (Defendant) was convicted of
driving under the influence of intoxicating liquor (DUI) in violation of
Hawaii Revised Statutes § 291-4(a)(1) and (2) (1985). She appeals,
challenging the admissibility of the breath test result on which her
conviction was based. We vacate the judgment of conviction and
remand for retrial.

I.

On November 16, 1985, after her involvement in a two-car accident, Defendant was arrested for DUI. After being transported to the police station, Defendant consented to and took a breath test on an Intoxilyzer 4011AS (Intoxilyzer). The result indicated 0.16 percent by weight of alcohol in her blood.[1]

At the bench trial, Officer Charles Simmons (Simmons) testified that he was "certified" as an Intoxilyzer operator and conducted the breath test on Defendant. In administering the test, Simmons followed step-by-step the procedures specified in the "Honolulu Police Department Intoxilyzer Operational Checklist" (Checklist). Upon completion of each specific step, he placed his initials in a space provided for the procedure. The last step was the removal of the test record card from the Intoxilyzer which showed a reading of 0.16 percent.

Simmons further testified as follows:

Q   And in your training and experience if the Intoxilyzer was not working properly would you know?

A   We would get an error light on the machine.

Q   And would the machine print?

A   The machine would not print on the card.

Q   Any of these things happen while testing the Defendant?

A   No, it didn't.

Q   Did the machine appear to be working properly?

A   Yes.

Q   How do you know that?

A   Everything worked properly and it printed on the card.

Trial Transcript at 28-29.

No witness, other than Simmons, testified regarding the Intoxilyzer. Over Defendant's objection on foundational grounds, the district court admitted the test result into evidence and found Defendant guilty.

---

[1]Hawaii Revised Statutes § 291-5(a) (1985) states:

Evidence of intoxication. (a) In any criminal prosecution for a violation of section 291-4, ten-hundredths per cent or more by weight of alcohol in the defendant's blood within three hours after the time of the alleged violation as shown by chemical analysis or other approved analytical techniques of the defendant's blood or breath shall be competent evidence that the defendant was under the influence of intoxicating liquor at the time of the alleged violation.

## II.

In the recent case of *State v. Souza,* 6 Haw. App. ___, 732 P.2d 253 (1987), we held that to have the test result of an Intoxilyzer admitted into evidence a proper foundation must be laid "showing that (1) the Intoxilyzer was in proper working order; (2) its operator was qualified; and (3) the test was properly administered." *Id.* at ___, 732 P.2d at 257. We further held that "in meeting the foundational prerequisites for the admission of the Intoxilyzer test result there must be a showing of strict compliance with those provisions of [Chapter 111 of Title 11 of the Hawaii Administrative Rules] which have a direct bearing on the validity and accuracy of the test result." *Id.* (footnote omitted).

Here, there was no showing by the State of strict compliance with § 11-111-2(b)(3)[2] of Chapter 111 of Title 11 of the Hawaii Administrative Rules (Rules) dealing with testing of breath testing instruments for accuracy. Consequently, based on the *Souza* standard, the Intoxilyzer test result was inadmissible.

Nonetheless, the State presents novel contentions that the test result was admissible because (1) Simmons had meticulously followed the Checklist and (2) the Intoxilyzer is "fail-safe." We will analyze these contentions.

### A.

Citing *Oveson v. Municipality of Anchorage,* 574 P.2d 801 (Alaska 1978), the State argues that the Checklist "is a simplified method of establishing the admissibility of the test results, since it furnishes the court with a clear record that all the substantive test procedures were accomplished." However, *Oveson* is inapposite because Alaska's law

---

[2]Section 11-111-2(b)(3) of the Hawaii Administrative Rules provides:
Testing for accuracy shall be done no less frequently than every thirty (30) days and after every maintenance and repair using a minimum of two (2) reference samples of known alcohol concentrations at a known temperature within the range of one hundredths to thirty hundredths percent weight per volume (0.01% to 0.30% W/V) or higher known alcohol concentrations that are recommended by the breath testing instrument's manufacturer. The results of such analysis must agree with the reference sample value within the limits of plus or minus one hundredths percent weight per volume (±0.01% W/V) or such limits set by the director.

and regulations differ from those of Hawaii. The pertinent Alaska statute provided in relevant part as follows:

If it is established at trial that a chemical analysis of breath was performed according to approved methods by a person trained according to techniques, methods and standards of training approved by the Department of Health and Social Services, there is a presumption that the test results are valid and *further foundation for introduction of the evidence is unnecessary.*

*Oveson,* 574 P.2d at 803-04 (emphasis added). In turn, the approved method of administering the breathalyzer,[3] established by the Alaskan Department of Health and Social Services, included the completion of the "Breathalyzer Operational Checklist." *Id.* at 804.

Likewise, in *Aultman v. Motor Vehicle Division, Dept. of Revenue,* 706 P.2d 5 (Colo. App. 1985), the court held that the introduction of the operational checklist for intoxilyzer operators and testimony that the checklist procedures were followed constituted sufficient foundation for the admission of the test result. However, in Colorado, "Appendix A of the Department of Health rules and regulations provided a fourteen step operational checklist and procedure guide for intoxilyzer operators."[4] *Id.* at 6. *See also State v. Bush,* 595 S.W.2d 386 (Mo. App. 1980) (breathalyzer checklist was supplied by the Division of Health).

Unlike Alaska and Colorado, however, the Rules do not provide for the use of checklists by Intoxilyzer operators in Hawaii. In fact, the Checklist used by Simmons was a creation of the Honolulu Police Department.

Consequently, we hold that the mere introduction of the Checklist and of Simmons' testimony that he step-by-step completed each proce-

---

[3]In *Oveson v. Municipality of Anchorage,* 574 P.2d 801 (Alaska 1978), the breath testing instrument utilized was the breathalyzer, rather than the intoxilyzer.

[4]We note that the Colorado checklist "requires the intoxilyzer operator to perform a simulator solution test prior to each breath test." *Aultman v. Motor Vehicle Division, Dept. of Revenue,* 706 P.2d 5, 6 (Colo. App. 1985). To perform this test, "[a] sample of known alcohol content is tested and the machine must show results of the sample test within the error limits set out in the [Department of Health rules and regulations]." *Id.* In contrast, the Honolulu Police Department's Checklist does not require a testing of the Intoxilyzer for accuracy by a method approved by the Department of Health.

dure therein was insufficient foundation to admit the test result into evidence.

### B.

Although no expert witness testified that the Intoxilyzer was reliable and infallible, relying on the opinion in *People v. Drumm,* 122 Misc.2d 1051, 472 N.Y.S.2d 989 (1984), the State argues that the Intoxilyzer is "fail-safe." The State therefore asserts that based on Simmon's testimony that no "error light" went on and the Intoxilyzer "printed on the card," the test result was properly admitted. This argument is without merit.

*People v. Drumm, supra,* is a trial court's opinion. There, based on an expert witness' testimony concerning the scientific reliability of the intoxilyzer Model 4011AS, the county court concluded that "the internal, 'fail-safe' mechanism is sufficient to establish that the instrument is in proper working order, as a prerequisite for admission of the test results." *Id.* 122 Misc. 2d at 1057, 472 N.Y.S.2d at 993. However, where no expert witnesses testified regarding the reliability and admissibility of the intoxilyzer test result, other New York trial courts have not accepted *Drumm's* "fail-safe" conclusion. *See People v. Kester,* 130 Misc.2d 37, 494 N.Y.S.2d 823 (1985).

Moreover, in our view, the fact that the Intoxilyzer is functioning mechanically does not necessarily mean it is operating *accurately.* For example, if a 0.10 percent simulator solution used to test the Intoxilyzer registers a result of 0.13 percent, the Intoxilyzer may be functioning mechanically, although operating inaccurately. If a potential defendant's breath is tested on that Intoxilyzer, it will operate and print a card with the result being 0.03 percent off.

Also, the "error light" going on does not mean that the Intoxilyzer is not working properly. It merely means that there is an operator's error, for example, "when the Zero Adjust Knob is improperly moved during the test sequence, or the 'Zero' setting was made improperly before the test." 2 R. Erwin, *Defense of Drunk Driving Cases* § 24A.02 (3d ed. 1986). The absence of an operator's error does not mean that the Intoxilyzer itself is error free.

We are not persuaded that the Intoxilyzer is "fail-safe" in all respects, including its accuracy regarding the test result. We defer to the legislature's appointed expert, the Department of Health, to determine

whether the Intoxilyzer is totally "fail-safe." Until such determination is made, the State must strictly comply with § 11-111-2(b)(3) of the Rules regarding testing for accuracy to meet the foundational prerequisites.

Since the foundational evidence was insufficient, the district court erred in admitting the Intoxilyzer test result into evidence.

Judgment vacated and case remanded for a new trial.

*Glen J. Dryer (Daniel E. Chur* with him on the brief; *Robinson & Ferrara,* of counsel) for defendant-appellant.

*Ernest J. Freitas, Jr.,* Deputy Prosecuting Attorney, for plaintiff-appellee.