**John Q. ADAMS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–8573.**

Court of Appeals of Alaska.

Dec. 17, 2004.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

John Q. Adams appeals his conviction for misconduct involving a controlled substance in the fourth degree (possession of cocaine).[1] Adams contends that the police seized the evidence during an illegal pat-down search. He argues that the trial court erred in denying his motion to suppress. We agree with Adams and reverse his conviction.

### Factual background

While on patrol at around 9 p.m. on October 15, 2001, Fairbanks Police Officer Jonathan Terland noticed a car parked on a dead end street near a local grade school. Officer Terland was aware that the school had, on several prior occasions, been targeted by vandals, trespassers, and burglars. He therefore investigated. Officer Terland pulled up facing the car so that his headlights illuminated it. But he did not activate his emergency lights or block the car so it could not leave.

Officer Terland contacted a man who was standing outside the car whom he later identified as Mr. Linn. The officer asked Linn

what he was doing in the area. Linn stated that he had just picked up some baleen from the airport. He explained that the baleen smelled bad, so he had stopped to check on it. Linn pointed out the baleen and the officer confirmed through the dispatcher that it was legal for Linn to possess it.

Officer Terland then decided to verify Linn's story by contacting the passenger, later identified as John Q. Adams. Adams was seated in the car on the passenger's side. Officer Terland knocked on the car window, motioning for Adams to roll it down. But Adams got out of the car.

Officer Terland asked Adams what he was doing in the area. Adams told the officer that he and Linn had just been at a birthday party and were just driving around. He also said that a cover for the spare tire had come off so they had pulled into the dead end street to secure it. Adams did not mention the baleen.

Officer Terland testified that Adams appeared to be "extremely nervous." He said that Adams was very jittery, "placing his hands in his pockets, removing them, putting them back in his pockets."

Officer Terland decided to pat down Adams for weapons. He justified this action because Adams had given a different explanation for why he and Linn had stopped in the area than Linn had given, and because Adams was acting very nervous. The officer conceded that most people, when contacted for a generalized request for information, were nervous. He estimated that he would pat search for weapons approximately half of the people that he would contact in what he described as "generalized contacts."

In searching Adams, Officer Terland felt a hard cylindrical object that he immediately recognized as a crack pipe. He then reached into Adams's pocket and removed the crack pipe. A plastic bag of white powder came out with the pipe and fell to the ground. Officer Terland arrested Adams for possession of cocaine.

The State indicted Adams of one count of misconduct involving a controlled substance

1. AS 11.71.040(a).

in the fourth degree (for possession of cocaine). Adams moved to suppress the evidence, arguing that it was found as a result of an illegal pat-down search. Superior Court Judge Niesje K. Steinkruger denied the motion to suppress. Judge Steinkruger found that Officer Terland could properly approach the car and make a general request for information. She found that Adams voluntarily got out of the car. She concluded that after Adams gave a different explanation from Linn about why they were stopped on the dead end street, and because Adams was acting very nervous, that Officer Terland was justified in patting Adams down for weapons. She concluded that when he was doing the pat-down search for weapons, Officer Terland felt an item that he knew was a crack pipe. And at that point, Officer Terland could properly seize the crack pipe.

Following this decision, Adams entered a Cooksey[2] plea to misconduct involving a controlled substance in the fourth degree, reserving his right to appeal.

*Analysis*

Under the leading case of *Coleman v. State*,[3] a police officer has the authority to conduct an investigative stop when he has a reasonable suspicion that imminent public danger exists or serious harm to persons or property has recently occurred. The *Coleman* rule places greater restrictions on a police officer's authority to conduct an investigative stop than does federal law. *Coleman's* more stringent requirements are based on Justice Brennan's dissenting opinion in *Adams v. Williams*.[4] In that case, Justice Brennan expressed concern that stops based on something less than probable cause might simply be used as a pretext to conduct searches for evidence. Justice Brennan perceived a danger that the reasonable suspicion requirement, unless restricted, would "[open] the sluicegates for serious and unintended erosion of the protection of the Fourth Amendment."[5]

In *State v. G.B.*, we construed *Coleman* to allow a police officer to conduct an investigative stop for a relatively minor property crime.[6] We set out a balancing test to weigh the seriousness of the offense, the necessity for the stop, and the imminence of the threat to public safety.[7] In addition, "these factors must in turn be balanced against the strength of an officer's reasonable suspicion and the actual intrusiveness of the investigative stop."[8] As we stated in *Gutierrez v. State*, "the right to seize temporarily is not necessarily the right to search."[9]

When we apply these standards of Alaska law to the present case, we conclude that the trial court erred in determining that Officer Terland could lawfully conduct a pat-down search of Adams. We agree with Judge Steinkruger that Officer Terland could approach Linn and Adams to ask them what they were doing. A police officer can approach a private citizen and direct questions to that person without turning the encounter into an investigative stop.[10] The encounter becomes an investigative stop only when the officer restrains the citizen. A citizen has been restrained by the police only when "a reasonably prudent person who is innocent of any crime would treat the police officer's actions as indicating an intent to restrain or confine the person, considering all the circumstances."[11]

When Officer Terland conducted the pat-down search of Adams it is undisputed that

2. *Cooksey v. State*, 524 P.2d 1251, 1257 (Alaska 1974).

3. 553 P.2d 40, 43–47 (Alaska 1976).

4. 407 U.S. 143, 153, 92 S.Ct. 1921, 1926, 32 L.Ed.2d 612 (1972); *See State v. G.B.*, 769 P.2d 452, 454 (Alaska App.1989).

5. *G.B.*, 769 P.2d at 454 (quoting *Adams*, 407 U.S. at 153, 92 S.Ct. at 1927).

6. 769 P.2d at 455–57.

7. *Id.* at 456.

8. *Id.*

9. 793 P.2d 1078, 1081 (Alaska App.1990) (citing *Howard v. State*, 664 P.2d 603, 609–10 (Alaska App.1983)).

10. *Romo v. Anchorage*, 697 P.2d 1065, 1068 (Alaska 1985).

11. *Id.*

he initiated an investigative stop. This is the point at which we conclude that Officer Terland's actions violated the *Coleman* standard. At the time that Officer Terland patted down Adams, he had little information which would lead a reasonable officer to conclude that imminent public danger existed or that serious harm to persons or property had recently occurred. The evidence in support of the conclusion that Linn and Adams were engaged in criminal activity can be summarized as follows: Adams and Linn were parked on a dead end street at night; the dead end street was near a grade school that had been frequently vandalized; when questioned, Adams and Linn gave apparently conflicting accounts of why they were stopped in the area.

Officer Terland did not give a convincing reason why he thought Adams might be armed and dangerous. The officer stated that Adams appeared to be very nervous during the questioning. But Officer Terland conceded that most people he questioned in similar "generalized request[s] for information" were nervous. He stated that, of the people he contacted in this kind of situation, he would feel the need to search approximately half of them. Officer Terland also pointed out that Adams was constantly taking his hands in and out of his pockets. But the officer conceded that it was cold out and that might be a possible explanation for Adams's behavior. Officer Terland never asked Adams to keep his hands out where he could see them—a far less intrusive action than conducting a protective search.

This appears to be the kind of search which the supreme court wished to preclude in *Coleman*. The purpose of the *Coleman* rule was to protect citizens' Fourth Amendment rights by limiting the application of searches conducted incident to investigatory stops. The purpose was to prevent "potential abuses in cases involving possessory crimes." [12] In the present case, the State had little to suggest that serious harm to persons or property had recently occurred, and the officer's need to conduct a protective search was weak.

*Conclusion*

We conclude that the State did not justify Officer Terland's pat-down search of Adams. We therefore conclude that the evidence which Officer Terland found pursuant to that search was the product of an illegal search and that the trial court erred in denying Adams's motion to suppress. We accordingly reverse Adams's conviction.

The conviction is REVERSED.

---

12. *G.B.*, 769 P.2d at 454.