Joseph E. ERICKSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8942.

Court of Appeals of Alaska.

July 7, 2006.

Rehearing Granted July 31, 2006.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

COATS, Chief Judge.

Joseph E. Erickson was a passenger in a car that was stopped by Alaska State Trooper Joseph Hazelaar for not having a front license plate. Trooper Hazelaar asked Er-

ickson for identification. Erickson stated he had no identification. He identified himself as Chris Erickson and provided a date of birth. Trooper Hazelaar checked the Alaska Public Safety Information Network (APSIN) and found no record matching the information provided by Erickson. He therefore concluded that Erickson had committed the offense of providing false information. He ordered Erickson out of the car and conducted a pat-down search. The search yielded an identification card that identified Erickson as Joseph Erickson. Trooper Hazelaar placed Erickson under arrest for giving him false information. During the pat-down search, Trooper Hazelaar found illegal drugs on Erickson. The State charged Erickson with possession of illegal drugs.

Erickson moved to suppress the evidence that Trooper Hazelaar found during the search. Superior Court Judge Donald D. Hopwood upheld the search. Erickson was convicted, and he appeals Judge Hopwood's decision denying his motion to suppress. We conclude that, under the facts of this case, Trooper Hazelaar could order Erickson out of the car. But we conclude that Trooper Hazelaar did not have a sufficient basis to conduct a pat-down search. We accordingly reverse Judge Hopwood's order upholding the search and remand for further proceedings.

### Factual and procedural background

On February 15, 2004, at 3:51 a.m. while on routine patrol in Fairbanks, Alaska State Trooper Joseph Hazelaar conducted a traffic stop for a traffic violation—no front license plate. Trooper Hazelaar observed two men in the car. Neither was wearing a seat belt. Trooper Hazelaar informed the driver of the license plate violation and asked both men to produce identification. The driver produced an Alaska-issued driver's license that identified him as Erik Schroeder. The passenger (Erickson) said he had no identification. Trooper Hazelaar then asked the passenger for his name and date of birth. The passenger identified himself as Chris Erickson and gave his date of birth as May 29, 1982. Trooper Hazelaar then contacted dispatch to run a background check on the individuals.

An APSIN check of Schroeder's driver's license revealed that Schroeder was on parole and probation for robbery in the first degree. The information provided by Erickson matched no record in the APSIN database. Trooper Hazelaar concluded that Erickson was probably falsely reporting his name. Trooper Hazelaar testified that it was his regular practice, during a traffic stop, to ask all individuals for identification, whether or not they were wearing a seatbelt. Trooper Hazelaar further testified that the majority of the time that a person provides a false name, they are hiding something such as an outstanding warrant or the fact that they are on probation.

Trooper Hazelaar concluded that, for his safety, he should order Erickson out of the car. He explained that he took this action because it was around 4:00 a.m., he was the only officer on the scene, and he had learned that Schroeder was on parole and probation for armed robbery. Trooper Hazelaar testified that Erickson acted suspiciously as he got out of the car. Specifically, Trooper Hazelaar said that, when he told Erickson to get out of the car, Erickson appeared surprised and apparently looked for various "exit points." When he actually got out of the car, he was very "hesitant" and appeared not to want to join Trooper Hazelaar at the rear of the car.

When Erickson left the car, Trooper Hazelaar saw a black bag or purse lying in the snow next to the passenger-side door; this bag or purse had not been there before Erickson got out of the car. When Erickson came to the back of the car, Trooper Hazelaar patted him down for weapons. Trooper Hazelaar testified that, as he moved his hand over Erickson's front pants pocket, he felt an identification card. He testified that, based on his training and experience, he "knew 100 percent that it was some type of form of identification," as opposed to a credit card, based on the firmness of its edge. Trooper Hazelaar then removed the item, which in fact was an identification card. The identification card's picture matched Erickson's face but the name on the card was Joseph E. Erickson rather than Chris Erickson.

Trooper Hazelaar then placed Erickson under arrest for making a false report.

In the trial court there was a factual dispute about whether the identification card was in Erickson's front pocket or in his wallet. At the evidentiary hearing, Trooper Hazelaar testified that he could not remember whether the card had been removed from Erickson's wallet or his front pocket. He later stated, after being reminded of his grand jury testimony, that the card was in Erickson's front pants pocket. Erickson contends that the audio tape of the contact clearly establishes that the trooper found the card in Erickson's wallet. Judge Hopwood resolved this conflict by finding that Trooper Hazelaar found the card in Erickson's front pants pocket.

After placing Erickson under arrest for making a false report, Trooper Hazelaar continued his pat-down search. He found a plastic bag with a green leafy substance inside it and a glass pipe with a white milky residue on the inside. Trooper Hazelaar then asked Erickson about the black bag on the snow beside the passenger door. Erickson replied that it looked like trash. Trooper Hazelaar retrieved the black bag and searched it. He found a white powdery substance that ultimately tested positive as methamphetamine. Trooper Hazelaar also found a hotel room key card in Erickson's wallet.

Erickson was indicted on two counts of fourth-degree misconduct involving a controlled substance under AS 11.71.040(a)(3)(A). The first count charged possession of the methamphetamine found in the black bag next to the car. The second count related to possession of methamphetamine that the police later found in the hotel room Erickson shared with Schroeder. In addition, the State charged Erickson with sixth-degree misconduct involving a controlled substance for possession of marijuana and with providing false information.[1]

Erickson moved to suppress all of the evidence that the State obtained after Trooper Hazelaar ordered him to get out of the car. Judge Hopwood conducted an evidentiary hearing and denied the motion to suppress. Judge Hopwood concluded that Trooper Hazelaar validly stopped the car for a traffic violation. He concluded that Trooper Hazelaar had legitimate concerns about his safety and was justified in ordering Erickson out of the car and patting him down for weapons. Judge Hopwood considered the facts that Trooper Hazelaar was the only officer at the scene, that he made the stop at approximately 4:00 a.m., and that he had just discovered that the driver, Schroeder, was on probation and parole for a serious felony. Furthermore, the judge considered that Erickson claimed not to have identification and that there was no record in APSIN matching the name Chris Erickson. He noted that Trooper Hazelaar testified that Erickson appeared to be under the influence of something and was acting suspiciously.

Judge Hopwood found that, while Trooper Hazelaar was patting down Erickson for weapons, he discovered what he believed was an identification card in Erickson's pocket. Trooper Hazelaar removed the card from Erickson's pocket and identified him. Trooper Hazelaar then arrested Erickson for making a false report and handcuffed Erickson.

Judge Hopwood found that Trooper Hazelaar then searched Erickson incident to the arrest. Trooper Hazelaar discovered money, the glass pipe with the residue, and the baggie with the green leafy substance in it. He also discovered the room card key, which led to the search of the hotel room. Judge Hopwood denied Erickson's motion to suppress.

Erickson was convicted by a jury of fourth- and sixth-degree misconduct involving a controlled substance for possessing the methamphetamine found in the black bag and the marijuana found on his person. The trial court granted a motion for judgment of acquittal with respect to the false information and report charge, and the jury acquitted Erickson on the fourth-degree misconduct involving a controlled substance count stemming from the methamphetamine found in the hotel room. Erickson now appeals from

1. AS 11.71.060(a)(1); AS 11.56.800(a)(1)(B)(i).

Judge Hopwood's order denying his motion to suppress.

*Why we conclude that Trooper Hazelaar could order Erickson out of the car*

■ In *Maryland v. Wilson*,[2] the United States Supreme Court held that a police officer can order the driver and the passengers out of a car that the officer has stopped for a routine traffic violation, without need of any further justification. The State urges us to adopt this federal standard. But we conclude that we do not need to decide this issue. In our view, Judge Hopwood found case-specific reasons that justified Trooper Hazelaar's action of ordering Erickson out of the car. First, Judge Hopwood pointed out that the stop occurred at 4:00 a.m. and that Trooper Hazelaar was the only officer at the scene. Trooper Hazelaar then found out that the driver, Schroeder, was on parole and probation for a serious felony offense. Erickson appeared to be under the influence of alcohol or drugs. Furthermore, Trooper Hazelaar suspected that Erickson had given him false identification because there was no record of "Chris Erickson" in the APSIN database. We conclude that Judge Hopwood did not err in concluding that Trooper Hazelaar had legitimate case-specific reasons for ordering Erickson out of the car.

*Why we conclude that Judge Hopwood erred in finding that Trooper Hazelaar could conduct a pat-down search of Erickson*

■ The State argues that Trooper Hazelaar had probable cause to arrest Erickson for giving false information to a police officer about his identity while he was "under arrest, detention, or investigation for a crime...."[3] In the first place, we question whether Erickson was under detention or investigation for a crime. At the time of Erickson's offense, the Alaska Statutes defined failure to wear a seatbelt as an infraction that was punishable by a fine of fifteen dollars.[4] Furthermore, even if a violation of

the seatbelt law can be classified as a crime, the State has not presented any evidence which would allow us to conclude that the fact that Erickson's name did not appear in APSIN established probable cause for Trooper Hazelaar to arrest Erickson for giving a false name.

The State's assertion, for which it did not provide any evidence, is that the APSIN database is so comprehensive and accurate that if a person's name is not listed, a police officer can conclude that the person has given him a false name and has probable cause to arrest the person for giving false identification. It appears that APSIN includes the name of anyone who has an Alaska driver's license.[5] It also appears that APSIN includes the name of anyone with an arrest, a criminal conviction, or a traffic ticket originating in Alaska.[6] But even assuming this information is accurate, many people would not be listed in the database. It seems likely that many Alaska residents do not have driver's licenses. In particular, a resident of a bush community might have little reason to have a driver's license. Furthermore, many people visit Alaska from other states and countries. It seems likely that they would not appear in the APSIN database. Furthermore, the State's argument appears to rest on an unrealistic expectation that information in the APSIN database is accurate and can be easily obtained. Many people go by nicknames, middle names, or initials. Many women change their last name when they are married. Accordingly, if the name is not entered in the database the same way it is given to the officer, the officer might not locate the name even if it was in the database. And it certainly seems possible that a trooper or a dispatcher could make a mistake in spelling a name or in hearing or writing down a date of birth.

The foregoing examples are some of the reasons why we cannot accept the State's assertion that Trooper Hazelaar's inability to

---

**2.** 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

**3.** Former AS 11.56.800(a)(1)(B)(i).

**4.** AS 28.05.095(a)(2) and AS 28.05.099(a).

**5.** See *http://www.dps.state.ak.us/apsin/whatapsin.asp*; *http://www.dps.state.ak.us/apsin/histapsin.asp*.

**6.** *Id.*

find Erickson's name in the APSIN database gave the trooper probable cause to arrest Erickson for falsely identifying himself. (We also note that Judge Hopwood granted Erickson's motion for judgment of acquittal on the charge that he falsely identified himself.) We conclude, on the record before us, that, although Trooper Hazelaar might have had reasonable suspicion that Erickson gave him a false identity, he did not have probable cause to arrest Erickson on that ground. Therefore, we reject the State's assertion that the trooper was authorized to search Erickson incident to that arrest.

■ The State next contends that Trooper Hazelaar had reasonable grounds to conduct a pat-down search of Erickson for weapons. Trooper Hazelaar initially stopped the car in which Erickson was a passenger for not having a front license plate—a relatively minor traffic violation for which Erickson apparently had no responsibility. The trooper had probable cause to cite Erickson for failure to wear a seatbelt. But this offense was also a minor infraction, punishable by a fifteen-dollar fine.

The standard for conducting a pat-down search for weapons in these circumstances is set out in *Free v. State*.[7] In that case, the Alaska Supreme Court concluded that, when a police officer has legitimately stopped a person, he may conduct a limited search for weapons if he reasonably believes that the person may be armed and dangerous:

> The fourth amendment allows a police officer who has a reasonable belief that the individual with whom he is dealing may be armed and dangerous to conduct a limited search for weapons for his own protection. The officer need not be "absolutely certain" that the individual is armed, nor have probable cause to arrest him for a crime—only that his safety or that of others may be in danger. The officer's reasonable belief may be based on his own personal observations or information from a reliable third party.[8]

Although we conclude that the information that Trooper Hazelaar had was sufficient to allow him to order Erickson to get out of the car, we do not believe that the record shows that the trooper had sufficient reason to conduct a pat-down search for weapons. It is true that the stop occurred at 3:51 a.m., that Trooper Hazelaar was by himself, and that the trooper learned the driver, Schroeder, was on probation or parole for a serious felony offense. Furthermore, Erickson appeared to be under the influence of some drug, had no identification, and the trooper could not identify him in the APSIN database. The trooper also testified that Erickson acted suspiciously when the trooper told him to get out of the car.

However, in our view, these facts do not support a reasonable belief that Erickson was armed and dangerous. Professor LaFave, in his treatise on search and seizure, lists circumstances that would justify a pat-down search where the officer has stopped a person for "a legitimate non-criminal reason":

> a characteristic bulge in the suspect's clothing; observation of an object in the pocket which might be a weapon; an otherwise inexplicable sudden movement toward a pocket or other place where a weapon could be concealed; an otherwise inexplicable failure to remove a hand from a pocket; awkward movements manifesting an apparent effort to conceal something under his jacket; backing away by the suspect under circumstances suggesting he was moving back to give himself time and space to draw a weapon; awareness that the suspect had previously been engaged in serious criminal conduct; awareness that the suspect had previously been armed; awareness of recent erratic and aggressive conduct by the suspect; discovery of a weapon in the suspect's possession; discovery that the suspect is wearing a bullet[-]proof vest as to which he makes evasive denials; and awareness of circumstances which might prompt the suspect to take defensive action because of a misunderstanding of the officer's authori-

7. 614 P.2d 1374, 1378 (Alaska 1980).

8. *Id.* (internal citations omitted).

ty or purpose.[9]

The Alaska cases that we have examined are consistent with the federal standard set out in LaFave. For instance, in *State v. Wagar,*[10] the Alaska Supreme Court reviewed a case where a trooper approached a couple in a parked car. The trooper had been informed by a witness that the occupants in the car appeared to be using cocaine and drinking.[11] When the trooper approached the car, the man, Wagar, got out of the car. The trooper told Wagar not to put his hands in his pockets. Wagar put his hands in his pockets in spite of the trooper's admonition. The trooper also stated that Wagar turned away from him in a type of fighting posture. The trooper stated that, because of these actions by Wagar, he concluded that he was "potentially ... at risk." The trooper frisked Wagar for weapons. He ultimately found cocaine.[12]

In upholding the trooper's right to conduct the pat-down search, the Alaska Supreme Court, relying on *Terry v. Ohio,*[13] stated:

Not every legitimate stop can be accompanied by a frisk. What is needed is a reasonable belief at the time of the initiation of the frisk that the suspect may be armed and dangerous.[14]

The Alaska Supreme Court held that the specific factors that the trooper set out justified his performing a pat-down search of Wagar.

In *Brown v. State,*[15] a police officer caught Brown walking down the hall of a hotel carrying a portable television set which the officer suspected might have been stolen. After the officer asked Brown several questions, Brown gave evasive answers. The officer conducted a pat-down search of Brown. We upheld the pat-down search on the ground that the officer reasonably suspected that

Brown had recently committed a burglary in the hotel from which he was taking the television set. We concluded that, because the officer had a reasonable suspicion that Brown was involved in a burglary, which was a felony under Alaska law, it was reasonable for him to "fear that someone suspected of burglary would carry a weapon and resort to violence." [16]

By contrast, in *Adams v. State,*[17] a police officer contacted two men (Adams and Linn) at night. We summarized the situation as follows: "Adams and Linn were parked on a dead[-]end street at night; the dead[-]end street was near a grade school that had been frequently vandalized; when questioned, Adams and Linn gave apparently conflicting accounts of why they were stopped in the area." [18] The officer stated that Adams appeared to be very nervous when he questioned him. The officer also stated that Adams was constantly taking his hands in and out of his pockets. But the officer conceded that it was cold outside and that he had never asked Adams to keep his hands out of his pockets. We concluded that the officer had not given "a convincing reason why he thought Adams might be armed and dangerous" and held that the officer had no basis to conduct a pat-down search.[19]

Admittedly, *Adams* is distinguishable from the present case. In *Adams,* the officer was merely investigating possible criminal activity, and one of the questions before us was whether the officer had a sufficient basis to conduct an investigative stop. Here, the officer was justified in stopping Schroeder and had probable cause to cite Schroeder and Erickson for traffic infractions. However, the standard remains that in order to conduct a pat-down search, the record must

---

9. 4 W. LaFave, *Search and Seizure* § 9.6(a) at 627–30 (4th ed.2004) (citations omitted).

10. 79 P.3d 644 (Alaska 2003).

11. *Id.* at 646.

12. *Id.*

13. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

14. *Wagar,* 79 P.3d at 647 n. 4 (citation omitted).

15. 684 P.2d 874 (Alaska App.1984).

16. *Id.* at 879.

17. 103 P.3d 908 (Alaska App.2004).

18. *Id.* at 911.

19. *Id.*

establish a reasonable basis for the officer to conclude that the suspect might be armed and dangerous.[20] In this case, the record does not support such a conclusion.

There was simply nothing about the circumstances surrounding the offenses that Trooper Hazelaar was investigating that would indicate that Erickson might be armed and dangerous. We are concerned that, if we authorized a pat-down search under these circumstances, the police would be authorized to conduct a pat-down search of a passenger who had committed a seatbelt violation where the passenger's name did not appear in the APSIN database. We believe that more is required and that the facts in this case—that it was late, the officer was alone, and Erickson acted surprised, hesitant, looked for "exit points," appeared to be under the influence of some drug, had no identification, and was accompanied by a person on probation or parole—do not supply sufficient reasons to justify the pat-down search.

Our concern is that unless strictly regulated by courts, pat-down searches "may be used as a pretext to conduct a search for evidence."[21]

We accordingly conclude that Judge Hopwood erred in finding that Trooper Hazelaar was justified in conducting a pat-down search of Erickson. The trial court has not determined what evidence must be suppressed as a fruit of the illegal pat-down search or whether Trooper Hazelaar would inevitably have discovered the evidence that led to Erickson's convictions by observing the black bag or purse lying in the snow next to the car before he patted Erickson down. Because these issues remain, we remand to the trial court for further proceedings.

REVERSED and REMANDED. On remand, the trial court shall redetermine the suppression issues in light of this decision. The trial court is authorized to conduct evidentiary hearings or any other proceedings which it deems necessary. The trial court shall have until October 30, 2006 to make findings of fact and conclusions of law and

forward them to this Court. We retain jurisdiction of this appeal.

---

**20.** *Id.*

**21.** *State v. G.B.*, 769 P.2d 452, 456 (Alaska App. 1989). *See also Adams*, 103 P.3d at 911; *El-*

*dridge v. State*, 848 P.2d 834, 838 (Alaska App. 1993).