STATE of Alaska, Petitioner,

v.

**John Q. ADAMS, Respondent.**

No. S–11783.

Supreme Court of Alaska.

Oct. 13, 2006.

Before: BRYNER, Chief Justice, and MATTHEWS, Eastaugh, FABE, and CARPENETI, Justices.

### Order

IT IS ORDERED:

The Petition for Hearing, filed on 1/3/05 and granted on 3/30/05, is DISMISSED as improvidently granted.

Entered by direction of the court.

CARPENETI, Justice, with whom EASTAUGH, Justice, joins, dissenting.

John Q. Adams challenged a warrantless pat-down search that resulted in the seizure of drugs and drug paraphernalia. The trial court held that the officer was legally justified in conducting a pat-down search because the officer reasonably suspected imminent danger or harm. The court of appeals disagreed with the trial court's findings, concluding that the officer's suspicions were insufficient to support a pat-down search. Because I believe the court of appeals erred in substituting its view of the facts for the trial court's, I disagree with this court's decision to dismiss the petition for review as improvidently granted.

On October 15, 2001, at approximately 9:00 p.m., Fairbanks police officer John Terland observed a parked car on a dead-end street in a deserted area. There are no houses or businesses in the area and the officer was concerned about vandalism to a nearby school, which had been vandalized and burglarized in the past. The officer approached the driver of the car—Linn—who explained

---

that he was checking his whale baleen because it smelled. The officer then decided to question the passenger, John Adams. Adams's explanation of their presence on this dark, deserted street conflicted with Linn's. Adams did not mention the baleen but rather said the two men were returning from a birthday party and needed to replace a tire cover. The officer testified that Adams appeared "extremely nervous," and that he repeatedly placed his hands in and out of his pockets. Officer Terland asked Adams twice if he had any weapons. Adams did not respond to the first question, but then denied that he had a weapon.

Officer Terland testified that, as the investigatory stop went on, he began to fear for his safety. He explained, "the accumulation of contacting [Adams and Linn], where I contacted them ... the different stories and his stepping out of the vehicle ... and his presentation of his nervousness and ... as a whole, everything as a whole I interpreted. It started making me nervous ... and I wanted to ensure my safety...."

Based on the circumstances and Adams's behavior, Officer Terland conducted a pat-down search to look for weapons. During the search, he felt an object that he recognized as a crack pipe. When he pulled the pipe out of Adams's pocket, a bag of white powder fell out as well. He arrested Adams for drug possession.

Adams moved to suppress the crack pipe and powder as fruits of an illegal search and seizure. Relying on the following facts to establish a reasonable fear of imminent harm, Superior Court Judge Niesje J. Steinkruger held that the pat-down was justified:

Adams appeared nervous when talking to Officer Terland and kept putting his hands in his pockets. He also told Officer Terland a different story than Linn told; he stated they were parked in the dead-end street so Linn could put on a tire cover. Adams and Linn were on a dead-end

street, alone, at night, in an area the officer knew as a crime area.... The officer's experience, based on all the circumstances, led him to conclude that a prompt investigation was necessary.

The court of appeals held that the investigatory stop and pat-down search violated the Fourth Amendment, and it reversed Adams's conviction.[1] The court of appeals asserted that "Officer Terland did not give a convincing reason why he thought Adams might be armed and dangerous."[2] It noted that Officer Terland conceded most people would be at least somewhat nervous when questioned by an officer.[3] However, the court of appeals did not acknowledge Officer Terland's further testimony that, while individuals contacted by police often feel nervous, he thought Adams "seemed more nervous than just generalized contact with law enforcement."

The court of appeals also discounted Officer Terland's fear arising from Adams placing his hands in and out of his pockets. The court of appeals pointed out that the officer had conceded it was possible that Adams was simply trying to keep his hands warm on a cold night.[4] Ultimately, the court of appeals concluded that "the State had little to suggest that serious harm to persons or property had recently occurred, and the officer's need to conduct a protective search was weak."[5]

In my view, the court of appeals erroneously substituted its judgment for the trial court's in examining Officer Terland's credibility and factual testimony to determine whether he had sufficient cause to conduct a warrantless pat-down. The trial court is charged with the responsibility of judging witness credibility: "Witness credibility decisions are left to the trial court."[6] Furthermore, in examining whether sufficient cause exists to conduct a warrantless pat-down, an appellate court first reviews a trial court's

1. *Adams v. State,* 103 P.3d 908, 911 (Alaska App. 2004).

2. *Id.*

3. *Id.*

4. *Id.*

5. *Id.*

6. *Barios v. Brooks Range Supply, Inc.,* 26 P.3d 1082, 1087 (Alaska 2001).

factual findings for clear error and then uses its independent judgment to determine whether those facts are sufficient to create probable cause. As the court of appeals has noted, "Absent clear error, we must accept the facts as the trial court finds them; whether probable cause arises from those facts, however, is a purely legal issue as to which we make a *de novo* determination." [7] I do not believe the standard for clear error has been met. Moreover, I believe the factual findings of the trial court are sufficient to support a pat-down search.

An officer who has a reasonable belief that the individual with whom he is dealing may be armed and dangerous may conduct a limited search for weapons for his own protection.[8] The officer need not be absolutely certain that the individual is armed, nor have probable cause to arrest him for a crime; the officer need only be reasonably concerned for his safety or the safety of others.[9] If, based on "specific and articulable facts," an officer reasonably suspects that the individual with whom he is speaking is engaged in criminal activity and is armed and dangerous, the officer may conduct "a carefully limited search of the outer clothing of the person." [10]

Thus, the pat-down in this case would be warranted if Officer Terland could describe specific, legitimate facts and circumstances which made him fear for his safety. In fact, he described several, including the conflicting stories, Adams's act of repeatedly reaching into his pockets, his excessive nervousness, his refusal to readily answer questions about weapons, and the circumstances of the questioning, which occurred at night, in the dark, in a dead-end, deserted street in an area known for vandalism and crime. Judge Steinkruger, after an evidentiary hearing, found Officer Terland to be credible, and found that he had articulated specific facts supporting his belief that Adams might be armed and pose a danger to Terland.

Because I do not believe the trial court erred in finding that Officer Terland was afraid that Adams might pose an imminent threat, or that his fear was reasonable under the circumstances, I dissent from today's decision to dismiss this petition as improvidently granted.

---

7. *Chandler v. State,* 830 P.2d 789, 792 (Alaska App.1992). *See also State v. Joubert,* 20 P.3d 1115, 1118–19 (Alaska 2001) ("Probable cause is determined objectively and requires only a fair probability or substantial chance of criminal activity, not an actual showing that such activity has occurred." (internal citations and quotations omitted)).

8. *Free v. State,* 614 P.2d 1374, 1378 (Alaska 1980).

9. *Id.*

10. *Gutierres v. State,* 793 P.2d 1078, 1080 (Alaska App.1990).