Joseph E. ERICKSON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8942.

Court of Appeals of Alaska.

April 25, 2008.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink and Quinlan G. Steiner, Public Defenders, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and David W. Márquez and Talis J. Colberg, Attorneys General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Joseph E. Erickson was riding in a car as a passenger when an Alaska State Trooper stopped the car for not having a front license plate. When the trooper asked Erickson for identification, Erickson claimed to have no documents proving his identity, and then (verbally) he falsely identified himself to the trooper as "Chris Erickson".

When the trooper entered this false information into the APSIN database (the Alaska Public Safety Information Network), he found no matching record, and he therefore concluded that Erickson was lying about his identity.

The trooper ordered Erickson out of the car and patted him down. This pat-down search yielded an identification card that correctly identified Erickson as "Joseph Erickson". At this point, the trooper placed Erickson under arrest. The trooper then continued the pat-down search. During the continued search, the trooper found drugs— a plastic bag containing a green, leafy material and a glass pipe containing a milky white residue.

The trooper also noticed a black bag lying on the snow beside the passenger door of the car. When the trooper asked Erickson about this bag, Erickson replied that it "looked like trash". The trooper then retrieved the bag and searched its contents. He found a powdery substance that later was identified as methamphetamine.

Erickson was ultimately convicted of possession of methamphetamine (the substance inside the black bag) and possession of marijuana (the green, leafy material found on his person).

In our earlier decision in this case, *Erickson v. State*, 141 P.3d 356 (Alaska App.2006), we concluded that the trooper could properly require Erickson to get out of the car, but that the trooper had no grounds for conducting a pat-down search of Erickson's person. *Id.* at 359–362. We therefore directed the superior court to decide what evidence had to be suppressed as a fruit of the illegal pat-down. *Id.* at 362.

On remand, Superior Court Judge Donald D. Hopwood held an evidentiary hearing. At this hearing, the trooper testified that the black bag was plainly visible alongside the vehicle—because, even though snow was falling heavily at the time of the traffic stop, the black bag had no snow on it, and thus it stood out against the white ground. From this, the trooper inferred that the bag had either fallen out of the car when Erickson got out, or that someone inside the car had just thrown the bag from the car.

The trooper testified that, even if he had not conducted a pat-down search of Erickson's person, he still would have searched the bag. The trooper told the superior court that, when Erickson indicated that he had never seen the bag before, the trooper took this to be a disclaimer of ownership—and he therefore felt free to search the bag as abandoned property.

The trooper further testified that, after he found the powdery substance in the bag, he would have arrested Erickson even if he had not conducted the earlier pat-down search— and that, following Erickson's arrest, he would *then* have thoroughly searched Erickson's person.

Responding to the State's contention that the trooper could lawfully search the black bag because it was abandoned, Erickson argued that his denial of ownership was the tainted fruit of the earlier illegal pat-down search.

Judge Hopwood ultimately agreed with the State that the trooper would have seized and searched the black bag, regardless of what had occurred prior to that time. Specifically, Judge Hopwood concluded that, even without the preceding unlawful search of Erickson's person (and the discovery of the drugs on his person), the trooper inevitably would have asked Erickson about the bag and that, given the circumstances, Erickson would inevitably have denied ownership of the bag—thus enabling the trooper to search the bag as abandoned property.

Erickson's case now returns to us, and Erickson challenges the superior court's ruling that the search of the black bag was lawful.

*The State can not rely on the doctrine of abandoned property to justify the search and seizure of the bag, because Erickson's verbal abandonment of the bag (his disclaimer of ownership) was the fruit of the earlier illegal pat-down search and the consequent discovery of drugs on Erickson's person*

■ In its supplemental brief to this Court, the State takes the position that the trooper's search and seizure of the bag was lawful because Erickson disclaimed ownership of the bag, and thus it was "abandoned" for Fourth Amendment purposes. But our prior case law in this area firmly holds that if a defendant's act of abandonment is prompted by an illegal search or seizure, the State can not rely on that act of abandonment as justification for a search and seizure of the abandoned object(s).

Here is our discussion of this point in *Joseph v. State*, 145 P.3d 595 (Alaska App. 2006):

> While the police were chasing him, Joseph took out the plastic baggie containing the cocaine and threw it to the ground. This action might be viewed as an abandonment of the cocaine. However, as this Court noted in *Young v. State*, 72 P.3d 1250, 1255 (Alaska App.2003), "[a]cts of abandonment prompted by unlawful police conduct are generally considered the tainted fruit of the illegality." Thus, because Joseph threw away the cocaine in response to police efforts to unlawfully seize him (that is, police efforts to subject him to an unlawful investigative stop), the cocaine would be viewed as the tainted fruit of the police misconduct.

*Joseph*, 145 P.3d at 601 (footnote omitted).

The omitted footnote cites three cases from other states in support of this conclusion: *Cox v. State*, 586 So.2d 1321, 1322 (Fla.App.1991) (holding that when the defendant's act of abandoning or dropping a package of marijuana was prompted by or was the result of an illegal stop, the purported abandonment could not be used to justify a

warrantless search); *State v. Belton*, 441 So.2d 1195, 1199 (La.1983) ("When police officers make an investigatory stop without the legal right to do so, property abandoned or otherwise disposed of as a result thereof cannot be legally seized."); and *Comer v. State*, 754 S.W.2d 656, 659 (Tex.Crim.App. 1986) (abandonment must occur "independent of any police misconduct").

In addition to our discussion of this issue in *Joseph*, see Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, *Criminal Procedure* (3rd ed.2007), § 9.4(f), Vol. 3, p. 464, in which the authors state that the better rule is to exclude evidence of a defendant's "attempts to dispose of incriminating objects" when the attempt to get rid of the object stems from an illegal search or seizure:

> Incriminating admissions and attempts to dispose of incriminating objects are common and predictable consequences of illegal arrests and searches, and thus to admit such evidence would encourage such Fourth Amendment violations in future cases.

The State attempts to evade this authority by asserting that "[t]he record simply does not support [the] conclusion" that "Erickson's disclaimer of ownership [was] tainted ... by the illegal search". We disagree.

■ Erickson was not questioned about the bag, and he made no statement about the bag, until after the trooper conducted the illegal pat-down, found drugs on Erickson's person (a plastic bag containing a green, leafy material and a glass pipe containing a milky white residue), and announced that Erickson was under arrest. These circumstances give every reason to believe that Erickson's disclaimer of ownership was a fruit of the illegal search.

*The State's alternative argument: inevitable discovery*

■ As a fall-back position, the State endorses Judge Hopwood's theory of "inevitable abandonment"—the theory that even if Erickson had not been patted-down, and the trooper had not found drugs on Erickson's person, and Erickson had not been placed

under arrest, the trooper still would have inevitably asked the same question about the bag, and Erickson still would have inevitably disclaimed ownership of the bag. Based on this theory, the State argues that even if the illegal search of Erickson's person had never occurred, the trooper inevitably would have been authorized to retrieve and search the bag (because it was "abandoned" property).

The State's suggested version of events— its description of what would have happened, even if the illegal search of Erickson's person had never occurred—is one possible scenario. But one can also imagine that Erickson would have responded differently if he had not already been subjected to an illegal search, and if the trooper had not already found drugs on Erickson's person. For instance, if no illegal search had taken place, and the trooper had asked Erickson about the bag, Erickson might have said, "Oh, that's mine. It must have fallen out of the car when I opened the door."

Judge Hopwood believed that it was unlikely that Erickson would respond in that fashion—because Erickson knew that there were drugs on his person and in the bag, and because he was nervous. But despite these factors, there is nothing "inevitable" about the content of Erickson's response.

"Inevitable" does not mean "plausible", "expectable", or even "likely". Rather, a series of events is "inevitable" only when we can say with surety that, regardless of the variables, things would have turned out the same.

The *actual* events in this case were not "inevitable". That is, it was not "inevitable" that Erickson would disclaim ownership of the bag after the trooper patted him down and found drugs on his person. Erickson might well have responded, "Okay, you've got me. There are more drugs in the bag."

(And, if Erickson had done so, the State would now be hard-pressed to argue that the retrieval and search of the bag was not tainted by the preceding illegal search.)

There is even less inevitability concerning what Erickson *might* have said about the bag if he had not already been subjected to an illegal pat-down, and if the trooper had not

discovered the drugs on his person. One can speculate about what Erickson would have said, and one can even make informed guesses, but there is nothing inevitable about a person's decision how to respond to police questioning.

As the Third Circuit explained in *United States v. Vásquez de Reyes*, 149 F.3d 192 (3rd Cir.1998),

> In response to our inquiry, the government was unable to cite to any decision in which the inevitable discovery doctrine was applied to admit statements, as distinguished from physical evidence. While we know of no articulation of the inevitable discovery doctrine that [expressly] restricts its application to physical evidence, ... it is patent why [the doctrine has] generally, if not always, been so limited. A tangible object is hard evidence, and[,] absent its removal[,] will remain where left until discovered. In contrast, a statement not yet made is, by its very nature, evanescent and ephemeral. Should the conditions under which it was made change, even but a little, there could be no assurance [that] the statement would be the same.

*Vásquez de Reyes*, 149 F.3d at 195–96 (quoted in Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (4th ed.2004), § 11.4(a), Vol. 6, p. 268).

*Accord, United States v. White*, 339 F.Supp.2d 1165, 1176–77 & n. 56 (D.Kan. 2004) (the inevitable discovery applies only to physical evidence, not statements); *United States v. Awadallah*, 202 F.Supp.2d 55, 81–82 (S.D.N.Y.2002), *reversed on other grounds*, 349 F.3d 42 (2nd Cir.2003) (same).

*See also United States v. Pelullo*, 173 F.3d 131, 137 n. 4 (3rd Cir.1999) ("[determining] what Pelullo would or would not have testified to [under different circumstances] clearly would require speculation" inconsistent with the inevitable discovery doctrine); *United States v. Rodríguez*, unpublished, 2006 WL 2860633, at *11 (D.Conn.2006) ("as *De Reyes* makes clear, it is not so easy to conclude, let alone with a 'high level of confidence,' that Delossantos would have said the same thing to the police [in the absence of the prior unlawful arrest and search]");

*United States v. Castillo,* unpublished, 2006 WL 522104, at *14 (D.Me.2006) (questioning whether the inevitable discovery doctrine can ever be properly applied to as-yet-unmade statements).

■ Moreover, as Professor LaFave explains, for purposes of applying the "inevitable discovery" doctrine, there is an important distinction between cases that involve a "determination ... of what law enforcement agents would otherwise have done [and] with what results" and, on the other hand, cases that involve a determination of "what some other person would have done". LaFave *et al., Search and Seizure,* § 11.4(a), Vol. 6, p. 282. "Cases that rely upon individual behavior as a crucial link in the inevitable discovery chain, particularly when that behavior is heavily influenced by the illegality that did occur, rarely sustain an inevitable discovery theory." *Id.* at p. 283 (citing *State v. Topanotes,* 76 P.3d 1159, 1164 (Utah 2003)).

Conceivably, there might be cases where a court could properly find that an as-yet-unuttered statement was indeed "inevitable". But this is not one.

For these reasons, we reject the State's contention that, even if Erickson had not been subjected to the illegal search and ensuing arrest, he inevitably would have disclaimed ownership of the bag, and thus the trooper inevitably would have been authorized to retrieve and search the bag as "abandoned" property.

*Conclusion*

The evidence found in the black bag was the fruit of the earlier illegal pat-down search, and it should have been suppressed. Accordingly, the judgement of the superior court is REVERSED.

COATS, Chief Judge, dissenting.

I start with the proposition that the exclusionary rule generally extends only to evidence that the police discovered by acting illegally.[1] I would uphold Judge Hopwood's decision that the evidence, which the police used to convict Erickson, was not a product of the illegal search of Erickson. Therefore, the exclusionary rule would not apply to exclude the evidence.

In the present case, we have previously held that Trooper Hazelaar had authority to stop the car in which Erickson was a passenger and to order Erickson out of the car.[2] But we concluded that the record did not establish that the trooper had sufficient reason to conduct a pat-down search of Erickson for weapons.[3] We remanded the case to the trial court to determine "what evidence must be suppressed as a fruit of the illegal pat-down search" and whether any evidence might be admissible against Erickson under the doctrine of inevitable discovery.[4]

Judge Hopwood held an evidentiary hearing. At the hearing Trooper Hazelaar testified that the black bag was plainly visible alongside the vehicle, because the area was well lit and it was snowing heavily. The black bag, with no snow gathered on it, stood out on the "bleach-white snow." He was not certain if the bag had fallen out of the car when Erickson exited, or if the bag was intentionally thrown from the vehicle. He testified that, regardless of the pat-down of Erickson, he would have seized and searched the bag. Trooper Hazelaar told the court that he would have asked Erickson if he owned the bag, and that if Erickson denied it was his, that he would search the bag.

At the evidentiary hearing, Trooper Hazelaar testified that he asked Erickson about the bag as Erickson was approaching the rear of the car—*prior* to the pat-down. Because this testimony contradicted Trooper Hazelaar's earlier testimony at the first evidentiary hearing, the audio recording of the traffic stop (which was played at trial), and

---

1. *See, e.g., Smith v. State,* 948 P.2d 473, 477 (Alaska 1997) ("It is well settled that the exclusionary rule renders inadmissible evidence obtained indirectly as a result of an unlawful search or seizure as well as evidence directly obtained thereby." (citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963))).

2. *Erickson v. State,* 141 P.3d 356, 359 (Alaska App.2006).

3. *Id.* at 362.

4. *Id.*

Hazelaar's trial testimony, the State conceded in its argument that Hazelaar did not actually ask about the bag until *after* Erickson had been patted down for weapons. Judge Hopwood made a factual finding that Erickson was asked about the bag after the pat-down.

Trooper Hazelaar stated that it was clear that Erickson was denying that the bag belonged to him. Hazelaar therefore would have searched the bag. He testified that as a result of his search of the bag, he would have arrested Erickson and thoroughly searched him.

Judge Hopwood heard arguments on this issue. The State noted that Erickson had never argued that he would have claimed ownership of the bag. The State argued it would be unreasonable to assume that Erickson would ever claim ownership of the bag. Upon questioning from Judge Hopwood, the State admitted that on occasion a person suspected of a crime will admit ownership of a bag containing contraband, but that this did not occur here.

Erickson argued that his denial of ownership of the bag was tainted because it occurred after the illegal pat-down. Erickson therefore argued that it was not necessarily "inevitable" that Trooper Hazelaar would have been able to search the bag as abandoned property—because without the illegal pat-down, Erickson may have asserted ownership of the bag.

Following this hearing, Judge Hopwood concluded that all of the same evidence was still admissible. He implicitly recognized that the lynchpin to all the other evidence was the black bag.

Judge Hopwood concluded that Trooper Hazelaar, regardless of any questioning of Erickson about the bag, would have seized and searched a bag found on the side of the road. Judge Hopwood also found that Hazelaar would have asked Erickson about the bag and that Erickson would have denied ownership. Judge Hopwood found that Erickson was not knowledgeable on search and seizure law and

it would be extraordinarily rare for [a person without extensive legal knowledge] to be able to analyze the developing facts on the scene, have confidence in his conclusion, and overcome a very strong human reluctance and go on to admit to a state trooper at the scene of a traffic stop under these circumstances ownership of a bag containing illegal drugs.

He concluded that Erickson would have denied ownership under any circumstances and that the bag was consequently abandoned.

Therefore, based on the inevitable discovery and abandonment doctrines, Judge Hopwood found that "[t]hrough predictable investigative processes, Hazelaar would have searched the black bag even without previously conducting the pat-[down] search" and that "Hazelaar had the authority to search the black bag without a warrant as abandoned property." Because methamphetamine would have been found inside the bag, Hazelaar would then have arrested Erickson and would have searched him incident to the arrest and would have discovered the marijuana. (Erickson was acquitted of the charge stemming from the methamphetamine found in the hotel room, therefore no discussion of the seizure of the hotel key or search of the hotel room is necessary.)

Erickson again challenges Judge Hopwood's conclusion. Erickson primarily asserts that Judge Hopwood misapplied the abandonment doctrine by considering the statement he made after the illegal pat-down (where he disavowed ownership of the bag) to conclude that the search of the black bag would have occurred regardless of the illegal pat-down.

*Discussion*

This case turns on whether Trooper Hazelaar's search of the black bag was a fruit of the illegal pat-down search. Judge Hopwood concluded that Erickson's statements, disavowing any knowledge or ownership of the black bag were not a product of the illegal search. Specifically, Judge Hopwood found that the fact that the trooper had patted Erickson down and found evidence of drug possession on Erickson "did not influence Mr. Erickson's decision to deny ownership or control of the black bag. Nothing the trooper did unlawfully forced the defendant to

disclaim ownership or control of the bag. [Erickson] would have disclaimed them whatever happened, under all circumstances."

Judge Hopwood found that, by making statements denying any ownership or control of the black bag, the bag became "abandoned property" and Erickson had no reasonable expectation of privacy in the bag. Therefore, the trooper could seize the bag and search it. Judge Hopwood found that the trooper certainly would have done this. Trooper Hazelaar would have discovered the drugs in the bag, would have arrested Erickson for felony drug possession, and would have searched Erickson incident to the arrest. Therefore, Judge Hopwood concluded that the police would have discovered all of the evidence that the State admitted against Erickson at trial.

On appeal, Erickson's primary contention is that Judge Hopwood erred in utilizing Erickson's statement denying ownership in the black bag in finding that the black bag was abandoned. Erickson points out that he made the statement after Trooper Hazelaar had conducted the illegal pat-down search and found the evidence of drug possession in Erickson's pockets. He points out that he had not only been subject to an illegal pat-down search, but that a reasonable person in his position would have concluded that he was in police custody. He also points out that Hazelaar asked him about the black bag after the illegal pat-down but before the trooper had given him a *Miranda* warning. He therefore contends that Judge Hopwood erred in considering his statement disclaiming ownership of the black bag because the statement was not only a product of the illegal search, but was also the product of custodial interrogation conducted without the benefit of a *Miranda* warning.

This case presents a difficult issue. But I conclude that Judge Hopwood's finding, that Erickson's statement disclaiming ownership of the black bag was not a product of the illegal search, is sound. And I conclude that Trooper Hazelaar's question to Erickson about the black bag was on-the-scene questioning that did not violate Erickson's *Miranda* rights.

*Abandonment*

Abandonment of property defuses any Fourth Amendment expectation of privacy.[5] Abandonment occurs when a person discards property under circumstances that objectively manifest the intent to give up any and all expectation of privacy in the property, now and in the future.[6] In reaching the decision that Erickson abandoned the black bag, I have relied on the Alaska Supreme Court case of *State v. Salit*.[7] Salit presented his possessions for x-ray examination before boarding a flight departing from the Anchorage International Airport. When an employee conducting the examination asked to search Salit's handbag, Salit granted permission. The search turned up what appeared to be narcotics paraphernalia and a small bottle containing a white powdery substance.[8] The airport security police were summoned. When an officer arrived, he recognized the contents of Salit's handbag as drug paraphernalia. He asked Salit to come with him and began to escort Salit to the airport first-aid room. The officer noticed a garment bag on a chair. The officer was told that the bag belonged to Salit. But Salit denied owning the bag. The officer opened the garment bag and found what appeared to be cocaine. The police then took Salit to the first-aid station, read him his *Miranda* rights, and conducted further searches. The supreme court upheld the search of the garment bag on the theory that Salit had abandoned it.[9]

In contrast, Erickson attempts to rely on *Young v. State*.[10] But in that case, Young attempted to conceal contraband without the clear intent to permanently relinquish his

5. *State v. Salit*, 613 P.2d 245, 255 (Alaska 1980).

6. *Young v. State*, 72 P.3d 1250, 1253 (Alaska App.2003).

7. 613 P.2d 245.

8. *Id.* at 247–48.

9. *Id.* at 249.

10. 72 P.3d 1250.

ownership or control.[11] I agree with Judge Hopwood that Erickson's statement that the bag looked like trash objectively indicated a relinquishment of any reasonable expectation of privacy.

### Miranda

On the potential *Miranda* issue, I also find *Salit* instructive. In *Salit,* the Alaska Supreme Court held that the search of Salit's handbag was permissible because Salit had consented to the search. The court concluded that, by denying ownership of the garment bag, Salit had abandoned that bag and therefore terminated his reasonable expectation of privacy in the bag.[12] In reaching this conclusion, the court investigated whether "Salit's denial was attributable to unlawful police conduct." [13] The court noted that Salit had not been given a *Miranda* warning at the time he was asked whether he owned the bag. The court concluded that the officer's question to Salit fell within an exception to the *Miranda* doctrine: general on-the-scene questioning.[14] The court also found that the officer's question about whether Salit owned the bag did not constitute interrogation because there was "no basis for believing that [the officer's] question was for the purpose of eliciting an incriminating statement. He did not know the contents of the bag, and it was logical to make the inquiry so that Salit could have the bag taken with him to the first aid room. We do not believe that this single inquiry constituted interrogation." [15]

Certain facts make Erickson's case more difficult than *Salit.* Erickson made his statement after an illegal pat-down search. Furthermore, after Trooper Hazelaar conducted the illegal pat-down search and found the drugs on Erickson, Erickson was in custody

for *Miranda* purposes. I conclude, however, that the reasoning in *Salit* supports the conclusion that Judge Hopwood did not err when he concluded that the evidence that the State presented to convict Erickson was properly admitted in Erickson's trial.[16]

Judge Hopwood found that Trooper Hazelaar had seen the black bag and would have asked Erickson about it. Erickson's decision to deny ownership of the bag was not influenced by the earlier illegal pat-down search. The reasoning of *Salit* appears to support the conclusion that Erickson's denial, that the bag was not his, was not testimonial. In his treatise, *Search and Seizure,* Professor LaFave concludes that, where the police obtain a consent to search from a person who is in custody and has not been given *Miranda* warnings, the "prevailing and better view" is that the consent to search "is neither testimonial, nor communicative in the Fifth Amendment sense." [17] Erickson's denial that he had any connection to the black bag seems similar to a response to a request from a police officer to search the bag. Before Erickson could consent to any search, he would first have to acknowledge ownership of the bag. Erickson's response, denying ownership of the black bag, does not appear to be a response to interrogation.

I therefore would uphold Judge Hopwood's decision that Erickson's denial that the black bag was his was not a product of the earlier illegal pat-down search. Erickson's contention is that the statement was a product of the prior illegal search. But, as Judge Hopwood found, this seems highly unlikely.

I agree with the force of the majority's argument that if Erickson admitted that the black bag was his that he would have a

11. *Id.* at 1254.

12. *Salit,* 613 P.2d at 258.

13. *Id.* at 256.

14. *Id.* at 257.

15. *Id.* at 257–58.

16. *See, e.g., Beagel v. State,* 813 P.2d 699, 705 (Alaska App.1991) (stating that *Miranda* rights are triggered by custody and interrogation and that general on-the-scene questioning is not in-

terrogation); *People v. Bailey,* 172 A.D.2d 163, 163, 567 N.Y.S.2d 701 (1991) (holding that initial question of "whose wallet is this?" after officers found a wallet on the ground near two suspects "was meant to clarify the nature of the situation confronted and was not a part of a process of interrogation").

17. 4 Wayne LaFave, *Search and Seizure* § 8.2(j) at 117–18 (4th ed.2004) (quoting *People v. Thomas,* 12 Cal.App.3d 1102, 1110, 91 Cal.Rptr. 867 (Cal.Ct.App.1970)).

strong argument that his statement was the product of the prior illegal search. But that is not what Erickson did. Erickson denied that he had any connection with the bag. And, as Judge Hopwood found, it seems highly improbable that Erickson's statement was a product of the prior illegal search.

If Erickson's statement was not the product of the prior illegal search, then it makes no sense to exclude the evidence that the police obtained from the statement. The exclusionary rule should extend only to evidence that the police discover by acting illegally. Extending the exclusionary rule beyond this point simply constitutes an unnecessary windfall to the appellant. I would therefore uphold Judge Hopwood's decision.